# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| EL PASO COUNTY, TEXAS<br>500 E. San Antonio<br>El Paso, TX 79901 and<br><br>BORDER NETWORK FOR HUMAN RIGHTS<br>2115 N. Piedras St<br>El Paso, TX 79930,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>DONALD J. TRUMP, in his official capacity as<br>President of the United States of America<br>1600 Pennsylvania Avenue, NW<br>Washington, D.C. 20500,<br><br>MARK T. ESPER, in his official capacity as Acting<br>Secretary of Defense<br>1000 Defense Pentagon<br>Washington, D.C. 20301,<br><br>KEVIN McALEENAN, in his official capacity as<br>Acting Secretary of Homeland Security<br>245 Murray Lane, SW, Mail Stop 0485<br>Washington, DC 20528-0485,<br><br>TODD T. SEMONITE, in his official capacity as<br>Commanding General<br>United States Army Corps of Engineers<br>441 G Street, NW<br>Washington, DC 20314-1000,<br><br>DAVID BERNHARDT, in his official capacity as<br>Acting Secretary of the Interior<br>1849 C Street, NW<br>Washington, DC 20240,<br><br>　　　　　　　Defendants. | Civil Action No. 3:19-cv-66-DB<br><br>**SUPPLEMENTAL REPLY BRIEF IN LIGHT OF NOTICE OF DECISION BY THE DEPARTMENT OF DEFENSE TO AUTHORIZE BORDER BARRIER PROJECTS PURSUANT TO 10 U.S.C. § 2808** |

**TABLE OF CONTENTS**

                                                                                       **Page**

ARGUMENT ............................................................................................................................... 1

    I.    DOD'S RECENT ACTIONS CONFIRM PLAINTIFFS' ARTICLE III STANDING TO CHALLENGE THE PROCLAMATION AND DOD'S § 2808 SPENDING .................................................................................................. 1

    II.    PLAINTIFFS HAVE A CAUSE OF ACTION TO ENJOIN § 2808 CONSTRUCTION ..................................................................................................... 4

    III.    DEFENDANTS' § 2808 SPENDING IS UNLAWFUL ...................................... 6

    IV.    AN INJUNCTION OF § 2808 CONSTRUCTION IS WARRANTED ............... 7

CONCLUSION ............................................................................................................................ 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*,
    458 U.S. 592 (1982) ................................................................................................... 3

*Armstrong v. Exceptional Child Ctr.*,
    135 S. Ct. 1378 (2015) ............................................................................................ 4, 5

*Bennett v. Spear*,
    520 U.S. 154 (1997) ................................................................................................... 6

*Chiles v. Thornburgh*,
    865 F.2d 1197 (11th Cir. 1989) ................................................................................. 1

*City of Hartford v. Towns of Glastonbury*,
    561 F.2d 1032 (2d Cir. 1976) .................................................................................... 1

*City of Oakland v. Lynch*,
    798 F.3d 1159 (9th Cir. 2015) ................................................................................... 1

*City of Olmsted Falls v. FAA*,
    292 F.3d 261 (D.C. Cir. 2002) ............................................................................... 1, 3

*City of Sausalito v. O'Neill*,
    386 F.3d 1186 (9th Cir. 2004) ............................................................................... 1, 2

*Clinton v. City of New York*,
    524 U.S. 417 (1998) ................................................................................................... 1

*Cooper v. Tex. Alcoholic Beverage Comm'n*,
    820 F.3d 730 (5th Cir. 2016) ..................................................................................... 2

*Dalton v. Specter*,
    511 U.S. 462 (1994) ................................................................................................... 5

*Dep't of Commerce v. New York*,
    139 S. Ct. 2551 (2019) .............................................................................................. 1

*Gladstone Realtors v. Vill. of Bellwood*,
    441 U.S. 91 (1979) ..................................................................................................... 1

*Iowa ex rel. Miller v. Block*,
    771 F.2d 347 (8th Cir. 1985) ..................................................................................... 2

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ................................................................................................... 3

# TABLE OF AUTHORITIES
(Continued)

Page(s)

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012) ............................................................................................................... 6

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
508 U.S. 656 (1993) ............................................................................................................... 4

*Pennsylvania v. Kleppe*,
533 F.2d 668 (D.C. Cir. 1976) ............................................................................................... 2

*Regents of Univ. of Cal. v. Bakke*,
438 U.S. 265 (1978) ............................................................................................................... 4

*Teton Historic Aviation Found. v. DOD*,
785 F.3d 719 (D.C. Cir. 2015) ............................................................................................... 4

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015) ............................................................................................ 1, 7

*Trump v. Sierra Club*,
2019 WL 3369425 (U.S. July 26, 2019) ............................................................................... 5

*Vill. of Arlington Heights v. Metro. Hous. Devel. Corp.*,
429 U.S. 252 (1977) ............................................................................................................... 4

*Weyerhauser Co. v. FWS*,
139 S. Ct. 361 (2018) ............................................................................................................. 5

*Wyoming v. Oklahoma*,
502 U.S. 437 (1992) ............................................................................................................... 2

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) ............................................................................................................... 5

**Statutes**

5 U.S.C. § 706(2) ........................................................................................................................ 4

10 U.S.C. § 2801(c)(4) ................................................................................................................ 7

10 U.S.C. § 2808 ......................................................................................................................... 6

Consolidated Appropriations Act, § 739 .................................................................................... 5

**Other Authorities**

Hart & Wechsler, The Federal Courts and the Federal System 284 (7th ed. 2015) ................... 3

**ARGUMENT**

I. **DOD'S RECENT ACTIONS CONFIRM PLAINTIFFS' ARTICLE III STANDING TO CHALLENGE THE PROCLAMATION AND DOD'S § 2808 SPENDING**

A city or county has standing to sue where it shows a "harm to its own economic interests."[1] *City of Olmsted Falls v. FAA*, 292 F.3d 261, 268 (D.C. Cir. 2002).[2] Such harm can include the city or county's lost opportunity for an economic "benefit." *Clinton v. City of N.Y.*, 524 U.S. 417, 431 (1998).[3] In *City of Sausalito v. O'Neill*, 386 F.3d 1186 (9th Cir. 2004), for instance, Sausalito sued to enjoin the government from redeveloping a "former military base near Sausalito." *Id.* at 1194. The court held that the city had Article III standing, because the development project "would result in a detrimental increase in traffic and crowds in downtown Sausalito," and cause "aesthetic damage [that] will erode its tax revenue." *Id.* at 1198-99; *see City of Olmsted Falls*, 292 F.3d at 268 (city sufficiently "alleged harm to its own economic interests based on the environmental impacts of the approved project").

El Paso County has standing under the foregoing principles. First, it has lost the economic benefit of an expected $20 million construction project at Fort Bliss, the "lifeblood of the El Paso economy." ECF No. 55-26, ¶ 15; Pls. Supp. Br. 3; Govt. Supp. Br. 4 (admitting that the Fort Bliss

---

[1] Because Defendants make no new arguments concerning Border Network For Human Rights' standing, Govt. Supp. Br. 7, or El Paso County's standing based on reputational injury, Plaintiffs rest on their previous submissions on those issues. Pls. Opening Br. 11-13, 16-19.

[2] *See Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 110-11 (1979) ("A significant reduction in property values directly injures a municipality by diminishing its tax base"); *City of Oakland v. Lynch*, 798 F.3d 1159, 1164 (9th Cir. 2015) ("Oakland's expected loss of tax revenue satisfies the requirements of Article III."); *Chiles v. Thornburgh*, 865 F.2d 1197, 1209 (11th Cir. 1989) ("There can be no doubt that Dade County has standing" based on "economic detriment"); *cf. Texas v. United States*, 809 F.3d 134, 152 (5th Cir. 2015) (states had standing to challenge rule that had "a major effect on the states' fiscs").

[3] *See City of Hartford v. Towns of Glastonbury*, 561 F.2d 1032, 1037-38 (2d Cir. 1976) (city had standing to challenge agency's allocation of funds that city was eligible to receive); *cf. Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) (state had standing where it could "lose out on federal funds").

project has been "deferred"). Under "basic law[s] of economics," *Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 738 (5th Cir. 2016), that project would have created jobs, fostered growth, and boosted "tax revenue," *City of Sausalito*, 386 F.3d at 1198-99; *see* Pls. Supp. Br. 4. Second, El Paso County will experience increased traffic and congestion due to wall construction in the County's nearby vicinity. Pls. Opening Br. 14; ECF No. 55-26, ¶ 17-18. That construction will undermine the County's "regional economy," ECF No. 55-25, ¶ 13, and "ability to compete for business investment and tourism," ECF No. 55-26, ¶ 18—precisely the sort of economic injuries that courts found sufficient in *City of Sausalito* and *City of Olmsted Falls*.

Citing *Wyoming v. Oklahoma*, 502 U.S. 437 (1992), Defendants contend that the County must show "a direct injury in the form of a loss of specific tax revenues." 502 U.S. at 448. But *Wyoming* held that loss of specific tax revenues was *sufficient* to show economic injury—not that it was always *necessary*. *Id.* Numerous circuit-level decisions postdating *Wyoming* have upheld municipal standing even absent proof of specific lost tax revenues. *See supra* at 1 & n.1. And the two cases Defendants cite to suggest that the County's economic harm is a mere "generalized grievance" involved alleged injuries far more diffuse and attenuated than the County's injury here, which flows from the loss of a specific $20 million project in the County, and specific wall construction in the County's vicinity. *Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985) (state alleged that "but for the Secretary's implementation of [certain] disaster relief programs, agricultural production will suffer, which will dislocate agriculturally-based industries, forcing unemployment up and state tax revenues down"); *Pennsylvania v. Kleppe*, 533 F.2d 668, 671-72 & n.14 (D.C. Cir. 1976) (state alleged in "sketchy and uncertain" terms that without federal assistance in rebuilding hurricane-damaged businesses, the state would lose "tax revenues").

Defendants also mischaracterize Plaintiffs' argument as "a *parens patriae* claim on behalf of residents potentially impacted by the deferral of funding from Fort Bliss." Govt. Supp. Br. 6. But this is not a *parens patriae* case where a public entity asserts "[q]uasi-sovereign interests . . . in the well-being of its populace." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 602 (1982). El Paso is instead asserting its *own* proprietary interests—namely, budgetary harm because of lost tax, tourism, and commercial-development dollars. *See City of Olmsted Falls*, 292 F.3d at 268 (distinguishing claims "alleg[ing] harm to [the city's] own economic interests" from *parens patriae* claims).

Even if the County's claim were viewed under the *parens patriae* lens, moreover, it could still proceed. Defendants do not dispute that a county may assert a *parens patriae* claim to vindicate the "economic . . . well-being" of "its residents in general." *Snapp*, 458 U.S. at 607. Rather, they argue only that *parens patriae* claims are never "permitted against the federal government." Govt. Supp. Br. 6. But while a state or county is arguably forbidden from suing the federal government *parens patriae* to "protect [its] citizens [against] the operation of federal statutes," nothing forbids it from suing to "assert its rights *under* federal law." *Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007); Hart & Wechsler, The Federal Courts and the Federal System 284 (7th ed. 2015) (*Massachusetts* "recognized a state's standing to sue to require the federal government to comply with a federal statute"). At the very least, then, the County's National Emergencies Act (NEA) and Administrative Procedure Act (APA) claims are cognizable, because they assert the County's "rights under th[ose] Act[s]." *Massachusetts*, 549 U.S. at 520 n.17.

Finally, Defendants argue that the County cannot show traceability or redressability, because even if DOD were enjoined "from expending $20 million on border barrier projects," "the Court cannot require DOD to spend that discretionary lump-sum appropriation in the County."

3

Govt. Supp. Br. 7. But where a plaintiff's injury is its lost opportunity to "obtain a benefit," the plaintiff need not show "that he [will] obtain the benefit" if the court rules in its favor. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).[4] Said otherwise, "Article III does not demand a demonstration that victory in court will without doubt cure the identified injury." *Teton Historic Aviation Found. v. DOD*, 785 F.3d 719, 727 (D.C. Cir. 2015). The plaintiff must only show that its injury is "likely to be redressed by a favorable decision." *Vill. of Arlington Heights*, 429 U.S. at 262. Here, enjoining § 2808 wall construction would restore the County's opportunity to benefit from the planned project at Fort Bliss. And it is likely that DOD will readopt that project. After all, the merits of the Fort Bliss project have not changed; its cancellation stemmed solely from the President's desire to use that money for a wall.

## II. PLAINTIFFS HAVE A CAUSE OF ACTION TO ENJOIN § 2808 CONSTRUCTION

Plaintiffs have two independent causes of action to enjoin Defendants from spending § 2808 funds on a border wall. Pls. Supp. Br. 6-7. First is the equitable right to "sue to enjoin unconstitutional actions by . . . federal officers." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015). Second is the APA. *See* 5 U.S.C. § 706(2).

As to Plaintiffs' equitable right of action, Defendants contend that "Plaintiffs identify no history or tradition where courts of equity have entertained lawsuits to enforce purported violations of the Appropriations Clause that allegedly cause indirect harm to a local economy." Govt. Supp. Br. 8. But Defendants define the relevant historical tradition at an absurdly narrow level of

---

[4] *See Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 281 n.14 (1978) (where injury stemmed from inability "to compete" for admission, plaintiff had standing even without proof "that he would have been admitted in the absence" of the challenged action); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261-62 (1977) (where injury stemmed from a "barrier to constructing [certain] housing," plaintiff had standing to challenge barrier even though "[a]n injunction would not, of course, guarantee that [plaintiff's project] will be built").

4

generality. In *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), for instance, the Court did not ask whether there was a tradition of suits to enforce violations of the President's war powers that cause harm to steel-mill owners. Rather, the Court has simply looked to the "long history of judicial review of illegal executive action, tracing back to England," *Armstrong*, 135 S. Ct. at 1384; where, as here, a plaintiff seeks to enjoin illegal executive acts, he has a cause of action to do so. Defendants also accuse Plaintiffs of "recast[ing]" statutory claims as constitutional ones, in violation of *Dalton v. Specter*, 511 U.S. 462 (1994). Govt. Supp. Br. 8. But *Dalton* held only that "*all* executive actions in excess of statutory authority" were not "*ipso facto* unconstitutional," 511 U.S. at 472 (emphasis added), not that an executive action that flouts a statute could *never* flout the Constitution. Pls. Reply Br. 53-55. Defendants lastly point to the Supreme Court's stay in *Trump v. Sierra Club*, 2019 WL 3369425 (U.S. July 26, 2019), but as explained at oral argument, myriad factors distinguish this case from that one, *see* Oral Arg. Tr. 60-63.

As to Plaintiffs' APA cause of action, Defendants now concede that there is "final agency action." Govt. Supp. Br. 8. They maintain, however, that DOD's "decision to authorize" § 2808 projects is "committed to agency discretion by law." *Id.* As already explained, Pls. Reply Br. 57-58, that "quite narrow[]" exception to APA review does not apply here, *Weyerhaeuser Co. v. FWS*, 139 S. Ct. 361, 370 (2018)—most obviously because DOD has absolutely *no discretion* to ignore the Consolidated Appropriations Act's (CAA) prohibition on border-wall expenditures beyond the $1.375 billion allocated in the CAA itself. *See* CAA, § 739 ("None of the funds made available in this or any other appropriations Act may be used to increase . . . funding for a . . . project . . . as proposed in the President's budget request").

Defendants also invoke the "zone of interests" test, Govt. Supp. Br. 8, but that test does not apply where, as here, the government raises a statute as a *defense* to a constitutional claim. Pls.

5

Supp. Br. 9.  Yet even if that test did apply, Plaintiffs would satisfy it.  *Id.* at 9-10.  Defendants now insist that the zone of interests test applies "by reference to the particular provision of law upon which the plaintiff relies."  Govt. Supp. Br. 9 (quoting *Bennett v. Spear*, 520 U.S. 154, 175-76 (1997)).  But Plaintiffs rely on the CAA and the Appropriations Clause, and Defendants have never argued that Plaintiffs fall outside the CAA's zone of interests (thereby forfeiting such an argument), and have never explained why a plaintiff that loses the economic benefit of congressionally appropriated funds ($20 million toward Fort Bliss) would not fall within the Appropriations Clause's zone of interests.  Pls. Supp. Br. 9.  Defendants' observation that "Congress did not intend" § 2808 "to protect local governments," Govt. Supp. Br. 9, is beside the point, because in applying the zone of interests test, the Supreme Court "do[es] not require any indication of congressional purpose to benefit the would-be plaintiff," *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012).

## III. DEFENDANTS' § 2808 SPENDING IS UNLAWFUL

Defendants spill much ink arguing that their § 2808 border wall expenditures comply with that provision.  Govt. Supp. Br. 10-14.  Even if so, it would not matter for two reasons.  First, the Appropriations Clause bars Defendants from spending more than the $1.375 billion allocated in the CAA on the border wall—whether under § 284 or § 2808—because Congress's appropriation of that amount for the wall impliedly precludes additional spending.  Pls. Opening Br. 33-36.  And to erase any doubt, Congress passed § 739, which expressly bars such spending.  CAA, § 739.  Second, the President's Proclamation—which is a precondition for the exercise of § 2808 authority—exceeds his power under the NEA.  Pls. Opening Br. 19-26.

Even if this Court were to reach Defendants' § 2808 arguments, it should reject them for the two reasons Plaintiffs have already provided.  First, § 2808 states that the alleged "national emergency" must "require[] use of the armed forces."  10 U.S.C. § 2808.  According to the

6

Proclamation, the alleged national emergency is "the problem of large-scale unlawful migration," which supposedly necessitates a border wall.  ECF No. 55-14.  But the "armed forces" are not "*require[d]*" to stop unlawful immigration and build a border wall.  Those are classic law enforcement—not military—activities.  Pls. Opening Br. 37-38.  Second, § 2808 only authorizes "military construction projects," which are construction projects carried out with respect to "a base, camp, post, station, yard, center or other activity under the jurisdiction of the Secretary of a military department."  10 U.S.C. § 2801(c)(4).  DOD has crafted an elaborate plan involving land transfer and eminent domain to sweep much of the border under its administrative jurisdiction.  *See* Govt. Supp. Br. 11-13.  But that does not make the border "a base, camp, post, station, yard, center, or other activity."  10 U.S.C. § 2801(c)(4); *see* Pls. Opening Br. 38-40.  Neither Defendants' supplemental brief nor the administrative record explains how it could.

## IV.  AN INJUNCTION OF § 2808 CONSTRUCTION IS WARRANTED

If this Court agrees that § 2808 construction is unlawful, it should enjoin DOD from carrying it out.  Defendants have no legitimate interest in spending funds that Congress withheld, whereas Plaintiffs are suffering ongoing financial, reputational, and organizational injury because of Defendants' actions.  The injunction should bar all border wall construction, not just DOD's use of "the $20 million associated with the project at Fort Bliss."  Govt. Supp. Br. 15.  For instance, if the Court holds that the Appropriations Clause bars Defendants from spending over $1.375 billion on a wall, then it follows that *no* wall construction under §§ 2808 or 284 can proceed.  Defendants' restrictive view of this Court's equitable power ignores Fifth Circuit precedent upholding nationwide injunctions in the immigration realm.  *See Texas*, 809 F.3d at 187-88.

## CONCLUSION

Plaintiffs' summary-judgment motion and a permanent injunction should be granted.  Alternatively, Plaintiffs should be granted a preliminary injunction.

Dated: September 24, 2019

Respectfully submitted,

/s/ *Anton Metlitsky*
Anton Metlitsky (*Pro hac vice*)
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
(212) 326-2000
ametlitsky@omm.com

Ephraim McDowell (*Pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
emcdowell@omm.com

Kristy Parker (*Pro hac vice*)
Justin Florence (*Pro hac vice*)
Erica Newland (*Pro hac vice*)
THE PROTECT DEMOCRACY PROJECT, INC.
2020 Pennsylvania Avenue., NW, #163
Washington, DC 20006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
justin.florence@protectdemocracy.org
kristy.parker@protectdemocracy.org
erica.newland@protectdemocracy.org

Deana K. El-Mallawany (*Pro hac vice*)
THE PROTECT DEMOCRACY PROJECT, INC.
125 Walnut Street, Ste. 202
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
deana.elmallawany@protectdemocracy.org

Stephanie Llanes (*Pro hac vice*)
THE PROTECT DEMOCRACY PROJECT, INC.
222 Broadway, 19th Floor
New York, NY 10038
Telephone: (202) 579-4582
Facsimile: (929) 777-8428

stephanie.llanes@protectdemocracy.org

David Bookbinder (*Pro hac vice*)
NISKANEN CENTER
820 First Street, NE
Washington, DC 20002
Telephone: (301) 751-0611
dbookbinder@niskanencenter.org

Richard Mancino (*Pro hac vice*)
Shaimaa M. Hussein (*Pro hac vice*)
Samantha G. Prince (*Pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
RMancino@willkie.com
SHussein@willkie.com
MDollan willkie.com
SPrince@willkie.com

Stuart Gerson (*Pro hac vice*)
EPSTEIN BECKER GREEN
1227 25th Street, NW
Washington, DC 20037
Telephone: (202) 861-4180
Email: SGerson@ebglaw.com

Laurence H. Tribe (*Pro hac vice*)
Carl M. Loeb University Professor and
Professor of Constitutional Law
HARVARD LAW SCHOOL*
1575 Massachusetts Avenue
Cambridge, MA 02138
Telephone: (617) 495-1767
Email: tribe@law.harvard.edu

*Affiliation noted for identification purposes only

John C. Padalino (Texas State Bar No. 24041638)
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Telephone: (512) 596-2944

Facsimile: (512) 596-2944
john@padalinolaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically filed the foregoing document with the U.S. District Court for the Western District of Texas by using the CM/ECF system, which will send notifications of such filing to all CM/ECF counsel of record.

Dated: September 24, 2019

/s/ *Anton Metlitsky*
Anton Metlitsky (*Pro hac vice*)
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Telephone: (212) 326-2000
ametlitsky@omm.com