## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **EL PASO COUNTY, TEXAS and** | § | |
| **BORDER NETWORK FOR HUMAN** | § | |
| **RIGHTS,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **EP-19-CV-66-DB** |
| | § | |
| **DONALD J. TRUMP,** *in his official* | § | |
| *capacity as President of the United States* | § | |
| *of America,* **et al.,** | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION

On October 11, 2019, the Court issued a Memorandum Opinion granting

Plaintiffs El Paso County, Texas, ("El Paso County") and Border Network for Human Rights's

("BNHR") (collectively, "Plaintiffs") "Motion for Summary Judgment or, in the alternative, a

Preliminary Injunction" ("Motion for Summary Judgment") and denying Defendants[1] Donald J.

Trump, Mark T. Esper, Chad F. Wolf, David Bernhardt, Steven T. Mnuchin, William Barr, John

F. Bash, and Todd T. Semonite's (collectively, "Defendants") "Cross-Motion to Dismiss or for

Summary Judgment, and Opposition to Plaintiffs' Motion for Summary Judgment and a

Preliminary Injunction."   Mem. Op., ECF No. 129.   Therein, the Court ordered Plaintiffs to

file a proposed preliminary injunction specifying the scope of said injunction and Defendants

were given an opportunity to respond.   *Id.* at 33.

On this day, the Court considered Plaintiffs' "Supplemental Brief Addressing

Scope of Remedy" ("Plaintiffs' Supplemental Brief") filed in the above-captioned case on

October 21, 2019.   ECF No. 130.   The Plaintiffs were granted leave to file an Amended

---

1.   In suits against a public officer in an official capacity who cease to hold office while the action is pending, the officer's successor is automatically substituted as a party.   Fed. R. Civ. P. 25(d).

Proposed Order on October 24, 2019.   ECF No. 132.   On October 28, 2019, Defendants filed

their "Supplemental Brief Addressing Scope of Remedy" ("Defendants' Supplemental Brief").

ECF No. 134.   After due consideration, the Court is of the opinion that a declaratory judgment

and permanent injunction shall be granted in Plaintiffs' favor.

## BACKGROUND

On October 11, 2019, this Court held that Plaintiffs had standing to sue

Defendants.   Mem. Op. 32, ECF No. 129.   Further, it held that because the Presidential

Proclamation on Declaring a National Emergency Concerning the Southern Border of the United

States ("the Proclamation") seeks additional funds for border barrier funding in violation of the

2019 Consolidated Appropriations Act ("CAA") generally and § 739 of the CAA specifically, it

is unlawful.   *Id.*

In its opinion, the Court requested that Plaintiffs "file a proposed preliminary

injunction specifying the scope of said injunction."   *Id.* at 33.   In Plaintiffs' Supplemental

Brief, Plaintiffs ask the Court to:

> (1) issue a declaratory judgment that the Proclamation is unlawful
> to the extent it authorizes border wall construction using funds
> appropriated by the CAA for "military construction" under 10
> U.S.C. § 2808, and that Defendants' use of funds appropriated by
> the CAA for "military construction" under 10 U.S.C. § 2808 and
> "support for counterdrug activities" under 10 U.S.C. § 284 funds on
> building a border wall is unlawful; and
> (2) permanently enjoin Defendants Esper, [Wolf], Semonite,
> Bernhardt, and Mnuchin ("the agency head Defendants") from using
> funds appropriated by the CAA for "military construction" under
> § 2808 and "support for counterdrug activities" under § 284 on
> building a border wall.

Pls.' Supp. Br. 5–6, ECF No. 130.

Defendants counter in their Supplemental Brief that the Court should decline to

enter an injunction and should exclude the Proclamation from the Court's declaratory relief.

2

Defs.' Supp. Br. 1, 2–3, ECF No. 134.   Alternatively, if the Court did enter any injunctive relief, Defendants argue that it should enter an administrative stay pending appeal.   *Id.* at 13–14.   The Court disagrees with Defendants and will not stay its decision to permanently enjoin their use of § 2808 funds for border barrier funding, though it will not extend this injunction to § 284 funds.

## LEGAL STANDARDS

> To obtain any injunction, a plaintiff must show:
>
> (1) that [they have] suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–58 (2010); *see also, e.g., eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006), and *Winter*[2] *v. Nat. Res. Def. Council*, 555 U.S. 7, 32–33 (2008).   "[I]njunctive relief is a drastic remedy, not to be applied as a matter of course."   *O'Donnell v. Harris Cty.*, 892 F.3d 147, 155 (5th Cir. 2018) (quoting *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 733 (5th Cir. 1977)) (internal quotations omitted).

Injunctive relief never "follow[s] from success on the merits as a matter of course," *Winter*, 555 U.S. at 32, and, "[a]s with any equity case, the nature of the violation determines the scope of the remedy."   *Swann v. Charlotte-Mecklemburg Bd. of Ed.*, 402 U.S. 1, 16 (1971).   As such, an injunction "should be no more burdensome to the defendant than necessary to provide complete relief."   *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see*

---

2.  Throughout this opinion, the Court refers to these four factors as the "*Winter*" or "permanent injunction" factors for sake of brevity.

*also John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004) ("The district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order.").

Furthermore, "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding. Fed. R. Civ. P. 57 advisory committee's 1937 note. It is within the discretion of a trial court to grant declaratory relief on motion of party. *Delno v. Market St. R. Co.*, 124 F.2d 965, 967 (9th Cir. 1942) (citing § 6 of the Uniform Declaratory Judgment Act).

## ANALYSIS

To begin, Plaintiffs argue that the Court should issue a declaratory judgment that the Proclamation's invocation of § 2808 and the Defendants' use of §§ 2808 and 284 funds on the border wall are unlawful. Pls.' Supp. Br. 2, ECF No. 130. This declaratory judgment and the permanent injunction would only need to issue against the agency head Defendants, rather than the President himself. *Id.* at 2 n.1.

Next, Plaintiffs assert that a permanent, rather than preliminary, injunction should issue to stop the agency head Defendants from using these funds for border wall construction because the Court's grant of Plaintiffs' Motion for Summary Judgment was a final judgment ending the litigation on the merits. *Id.* at 3. Finally, Plaintiffs go through the permanent injunction factors and describe how they meet each. *Id.* at 4–7.

In response, Defendants call Plaintiffs' requested injunction overbroad and unjustified because Plaintiffs have failed to demonstrate irreparable injury and the Government's compelling interests in constructing border barriers outweigh the Plaintiffs' interests. Defs.' Supp. Br. 1, ECF No. 134. And Defendants claim that Plaintiffs' proposed injunction conflicts

4

with the Supreme Court's recent order staying an injunction that the District Court for the

Northern District of California entered.   *Id.* at 1–2 (citing *Trump v. Sierra Club*, 140 S. Ct. 1

(2019)).   Finally, Defendants argue that the Proclamation should be excluded from the Court's

declaratory judgment as there is no basis for such extraordinary relief that would necessarily run

against President Trump in his official capacity.   *Id.* at 2–3.

Because both sides and the Court agree that any declaratory judgment shall not

run against the President, the Court does not address the merits of this argument.   Instead, the

Court discusses the merits of a declaratory judgment against the agency head Defendants.

Then, because the Court's injunction § 2808 funds does not conflict with Supreme Court

precedent, the Court weighs the permanent injunction factors to conclude that a permanent

injunction shall be granted in Plaintiffs' favor, though more narrowly tailored than the injunction

they propose on both §§ 284 and 2808 funds.

## I.   A Declaratory Judgment Shall Enter Against the Agency Head Defendants.

Plaintiffs highlight that this Court expressly held that "[t]he Proclamation is

unlawful" and "the funding plan violates the CAA generally and specifically violates § 739."

Pls.' Supp. Br. 2, ECF No. 130 (quoting Mem. Op. 24, ECF No. 129) (internal quotations

omitted).   In accordance with that holding, Plaintiffs argue that this Court should issue a

declaratory judgment that the Proclamation is unlawful to the extent it authorizes border wall

construction using funds that the CAA appropriated for "military construction" under § 2808.

*Id.* (citing 28 U.S.C. § 2201(a) (court "may declare the rights and other legal relations of any

interested party seeking such declaration"); ECF No. 52, at 47 (Plaintiffs seeking declaratory

relief)).   And, according to Plaintiffs, the declaratory judgment should state that the agency head

Defendants' use of CAA funds appropriated for "military construction" under § 2808, and "support for counterdrug activities" under § 284 on building a border wall is unlawful.  *Id.*

Defendants counter that "such an order would not be appropriate in light of the Court's merits determination, which did not conclude the Proclamation was unlawful." Defs.' Supp. Mot. 13, ECF No. 134.  Defendants highlight that this Court's Memorandum Opinion only concluded that the use of § 2808 was inconsistent with the CAA.  *Id.*  Thus, according to Defendant, no declaratory judgment should issue against the Proclamation.  *Id.*

A declaratory judgment is appropriate here because it will "terminate the controversy" giving rise to the proceeding.  *See* Fed. R. Civ. P. 57 advisory committee's 1937 note.  Contrary to Defendants' argument, the conclusion in the Memorandum Opinion reads: "[b]ecause the Proclamation seeks additional funds for border barrier funding in violation of the CAA generally and § 739 of the CAA specifically, it is unlawful.  There is no genuine dispute as to any material fact, so Plaintiffs are entitled to judgment as a matter of law."  Mem. Op. 32, ECF No. 129.  It is within this Court's discretion to grant declaratory relief on Plaintiffs' motion.  *See Delno*, 124 F.2d at 967 (citing § 6 of the Uniform Declaratory Judgment Act). Thus, a declaratory judgment shall be granted in Plaintiffs' favor against the agency head Defendants' attempt to use CAA funds appropriated for "military construction" under § 2808 for border wall construction above and beyond the lawfully appropriated $1.375 billion.  CAA §§ 230, 231.  However, it will not extend to the CAA funds appropriated for "support for counterdrug activities" under § 284, explained further below.

## II.    The Court's Decision to Enjoin Does Not Conflict with Supreme Court Precedent.

Defendants point out that the Supreme Court has already stayed an injunction issued by another district court prohibiting the DOD from proceeding with the § 284 border

barrier projects.    Defs.' Supp. Br. 7, ECF No. 134 (citing *Sierra Club*, 140 S. Ct. 1).    In issuing

that stay, the Supreme Court determined that the balance of the equities tipped in the

Government's favor.    *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009) (explaining that stay

factors include irreparable injury, the balance of hardships, and the public interest)); *Sierra Club*,

140 S. Ct. at 1.    Consequently, the Defendants argue that there is no basis for this Court to issue

an injunction regarding the § 284 projects that would effectively override the Supreme Court's

order.    Defs.' Supp. Br. 7, ECF No. 134.    And this Court agrees.

As acknowledged in this Court's Memorandum Opinion, the Supreme Court

granted a stay in Defendants' favor, reasoning "that the Government has made a sufficient

showing at this stage that the plaintiffs have no cause of action to obtain review of the Acting

Secretary's compliance with [§] 8005."    *Sierra Club*, 140 S. Ct. at l.    Because DOD

Appropriations Act, § 8005, authorizes the Secretary of the Department of Defense to transfer

the $2.5 billion for § 284 Support for Counterdrug Activities, this Court found Plaintiffs'

argument that the DOD Secretary exceeded his statutory authority under § 284 unviable.    Mem.

Op. 6, ECF No. 129.    However, this conclusion and the Supreme Court's decision do not

mandate that this Court is prohibited from enjoining the use of § 2808 funds to augment border

wall funding in violation of the CAA.    *See id.*

## III.    The *Winter* Factors Tip in Favor of Plaintiffs, so a Permanent Injunction Shall Issue Against Defendants.

Plaintiffs ask the Court to issue a permanent injunction against the agency head

Defendants from using § 2808 funds on a border wall, while Defendants claim that Plaintiffs are

not entitled to such relief because they cannot demonstrate irreparable injury, and the balance of

the equities and public interest weigh against injunctive relief.    Pls.' Supp. Br. i, ECF No. 130;

Defs.' Supp. Br. 4, 6, ECF No. 134.

Because Plaintiffs satisfy the four *Winter* factors, the Court disagrees with the Defendants and issues a permanent injunction against the agency head Defendants' use of additional § 2808 funds to fund border barrier construction.   After addressing the first *Winter* factor, irreparable injury, the Court will turn to the third and fourth factors, the balance of the equities and public interest, respectively.   Because Defendants do not address the second *Winter* factor—that remedies available at law, such as monetary damages, are inadequate to compensate for the injury—the Court will agree with Plaintiffs' argument that "[m]oney damages cannot substitute for injunctive relief in this case" without further discussion.   Pls.' Supp. Br. 4, ECF No. 130 (citing *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008)).

1. Plaintiffs Have Suffered Irreparable Injury.

Plaintiffs claim irreparable injury citing this Court's conclusion that Plaintiffs have standing due to their reputational, economic, and organizational injuries.   *Id*. at 8 (citing Mem. Op. 9–22, ECF No. 129).   Further, according to the Plaintiffs, "[t]hose injuries are irreparable absent an injunction: the County's reputational and economic harm will persist as long as Defendants are allowed to carry out their plan to build a wall; and BNHR will continue to divert resources to counteract Defendants' unlawful actions as long as those actions remain in effect."   *Id*.

First, Defendants attack the viability of reputational harm as the basis for an injunction.   Defs.' Supp. Br. 4, ECF No. 134.   Second, Defendants argue that Plaintiffs' economic injury is indirect and, thus, cannot form the basis for an injunction.   *Id*. at 4–5. Finally, according to Defendants, BNHR's reallocation of resources also does not justify an injunction.   *Id*. at 5–6.

8

> *i.  Plaintiffs have shown more than reputational harm, which alone supports an injunction.*

As an initial matter, Defendants assert that Plaintiffs have not submitted any evidence to establish that they are injured by specific § 2808 projects that the Department of Defense ("the DOD") plans to undertake, as all of Plaintiffs' declarations pre-date the Secretary of Defense's decision.  *Id.* at 4.  This Court rejected this same argument in its Memorandum Opinion as it related to standing because there is more than a substantial risk that the DOD will use § 2808 funds on a border wall, at Fort Bliss's expense.  Mem. Op. 24, ECF No. 129.

However, Defendants argue that standing is a separate and independent inquiry than evaluating irreparable harm for an injunction, which requires separate and convincing proof. Defs.' Supp. Br. 4, ECF No. 134 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974); *White v. Carlucci*, 862 F.2d 1209, 1212 (5th Cir. 1989)).  All the cases that Defendants cite for this proposition are inapposite in this context as they involve distinguishable fact patterns and do not illustrate how the concrete injury facet of the standing inquiry is insufficient to satisfy the irreparable harm requirement for equitable relief.

First, *Carlucci*, involves an employment dispute wherein respondent claimed Title VII plaintiffs did not need to establish irreparable harm at all and the Fifth Circuit merely held that irreparable harm was a requirement for an injunction to issue, not that concrete injury is insufficient to meet the test.  862 F.2d at 1212.  In *Littleton*, the Supreme Court distinguished between the case or controversy requirement of standing and the irreparable injury *Winter* factor—again distinct from the assertion Defendants make that the concrete injury requirement of standing is insufficient to establish irreparable injury.  414 U.S. at 499. Moreover, *Littleton* involved the particularly fraught area of criminal prosecution and enjoining state actors that enveloped distinct federalism issues, not relevant to this case.  *Id.*  Likewise, in

9

*Lyons*, the Supreme Court distinguished between the case or controversy requirement and irreparable injury; it did not hold that concrete injury may never suffice to show irreparable harm. 461 U.S. at 103. Distinguishing between the case or controversy requirement and irreparable harm does not necessarily imply, as Defendants argue, that showing concrete injury is insufficient to show irreparable harm.

Furthermore, even if concrete injury did not suffice on its own, *Carlucci* illustrates that irreparable injury is intimately linked with the second *Winter* factor. 862 F.2d at 1212. The Supreme Court emphasized in *Carlucci* that the injuries all could be made whole by money damages or other relief, thus were not irreparable. *Id*. In contrast, the Plaintiffs here will not be made whole with traditional remedies at law—and Defendants do not contest this. *See supra* 8.

Next, Defendants cite *Sampson v. Murray* in which "the Supreme Court recognized that reputational harm 'falls far short of the type of irreparable injury which is a necessary predicate to the issuance' of an injunction." *Id*. (quoting 415 U.S. 61, 91–92 (1974)). Thus, according to Defendants, El Paso County's reputational injury from the President's proclamation itself cannot serve as the basis for injunctive relief against construction pursuant to statutory authorities dependent on that proclamation. *Id*.

However, the Court disagrees with Defendants' analysis of *Sampson v. Murray* for two reasons. First, *Sampson* dealt with a distinguishable factual situation involving a respondent who was a probationary worker alleging humiliation and reputational harm after being discharged without additional procedural safeguards. 415 U.S. at 91. The Supreme Court highlighted that it was not the discharge itself that was the harm, but "only that she was entitled to additional procedural safeguards in effectuating the discharge." *Id*. The Court

10

concluded "that no significant loss of reputation would be inflicted by procedural irregularities in effectuating respondent's discharge, and that whatever damage might occur would be fully corrected by an administrative determination requiring the agency to conform to the applicable regulations." *Id.*

Second, while the Court concluded that even assuming reputational damage did occur, it would not suffice for irreparable injury, the Court added a footnote:

> We recognize that cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found. Such extraordinary cases are hard to define in advance of their occurrence. We have held that an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual. But we do not wish to be understood as foreclosing relief in the genuinely extraordinary situation. Use of the court's injunctive power, however, when discharge of probationary employees is an issue, should be reserved for that situation rather than employed in the routine case.

*Id.* at 92, n.68 (citing *Wettre* v. *Hague*, 74 F.Supp. 396 (Mass. 1947); vacated and remanded on other grounds, 168 F.2d 825 (1st Cir. 1948)).

Therefore, this Court refuses to extend the conclusion in *Sampson* to this case, especially when the Supreme Court was careful to confine its conclusions to the facts of that case and specifically left open the possibility of irreparable injury in other employment situations with a "result[ing] effect on the employee['s]" reputation that warrants an injunction. *See id*. Far from foreclosing injunctive relief from all entities suffering reputational harm, the Supreme Court carefully left open the possibility. *See id*.

Moreover, here El Paso County's reputational harm is distinguishable in

11

important ways from *Sampson*.    To begin, El Paso County is far from a mere probationary

worker entitled to less procedural safeguards than a permanent employee.    *Id.* at 81.    El Paso

County and BNHR are central stakeholders.    *See* Mem. Op. 9, ECF No. 129.    Indeed, this

Court concluded that El Paso County is the object of the Proclamation, entitled to protection

from Defendants' statutory violations.    *Id.*    And unlike the Supreme Court in *Sampson*, this

Court cannot summarily conclude "that no significant loss of reputation would be inflicted by

procedural irregularities in effectuating respondent's discharge, and that whatever damage might

occur would be fully corrected by an administrative determination requiring the agency to

conform to the applicable regulations."    415 U.S. at 91.    This Court has already concluded that

Plaintiffs' reputational harm is significant.    *See* Mem. Op. at 10–14. ECF No. 129.    Finally,

unlike the plaintiff in *Sampson* who had other recourse through the administrative agency,

Defendants do not contest the second *Winter* factor that no other adequate remedies at law can

compensate Plaintiffs' injury.    *See generally* Defs.' Supp. Br., ECF No. 134.    While the

reputational harm alone is enough to satisfy the irreparable injury requirement, Plaintiffs also

have demonstrated economic harm.

> ii.  *Plaintiffs economic harm is irreparable absent an injunction.*

Defendants next argue that El Paso County's purported loss of tax revenue from

the deferral of the roads project at Fort Bliss also cannot support a finding of irreparable injury

because it is a generalized grievance insufficient to support standing.    *Id.* at 4 (citing *Iowa ex

rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985)).    Defendants claim that any decision to

the contrary would conflict with *Wyoming v. Oklahoma*, where the Supreme Court recognized

standing to challenge "a direct injury in the form of a loss of specific tax revenues," but

distinguished cases where "actions taken by United States Government agencies [have injured

their] econom[ies] and thereby caused a decline in general tax revenues." *Id.* at 4–5 (quoting

502 U.S. 437, 448 (1992)) (internal quotations omitted).   In reaching that conclusion, the

Supreme Court emphasized that States must establish a direct link between the tax at issue and

the administrative action being challenged to meet the requirements for Article III standing. *Id.*

at 5 (citing *Wyoming*, 502 U.S. at 448).

  Defendants argue that the direct causal connection that the Supreme Court found

critical to the finding of an injury in *Wyoming* is not present in this case, as El Paso merely

asserts generalized allegations of harm resulting from reduced tourism and business

development, as well as the deferral of the roads project at Fort Bliss. *Id.* at 5.   Defendants

point to the affidavit of Judge Samaniego, who is responsible for the County's tax rate and

budget, in which only the threat of generalized "economic harm" is raised. *Id.* (citing Decl. of

Judge Samaniego ¶¶ 2, 16 ECF No. 55-26).   Defendants conclude that this is fatal to Plaintiffs'

claims and to their request for equitable relief. *Id.*

  This Court has already rejected this argument because the diversion of resources

from Fort Bliss can hardly be described as generalized—it is directly tied to the unlawful deferral

of resources to border wall funding in violation of the CAA.   Mem. Op. 4, ECF No. 129.   Far

from a general decline in tax revenue, Defendants will divert $20 million away from a planned

military construction project at Fort Bliss in El Paso County.   Supp. Notice of the DOD

Decision 3, ECF No. 114.   "Fort Bliss is the lifeblood of the El Paso economy," contributing

billions of dollars and creating thousands of jobs.   Samaniego Decl. ¶ 15, ECF. No. 55-26.

Losing funds that had been appropriated for use at Fort Bliss "creates the imminent prospect of

economic harm to El Paso County." *Id.* ¶ 16.   That loss of funds also represents a missed

opportunity to "obtain a benefit," which can also suffice to show injury in fact. *N.E. Associated*

*Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 666 (1993).   Defendants recognize the legitimacy of this economic harm when they contest the breadth of the Plaintiffs' proposed injunction, but are forced to admit that "the absolute most Plaintiffs are entitled to is an injunction prohibiting DOD from using the $20 million in military construction funds initially associated with Fort Bliss." Defs. Supp. Br. 12–13.   And in addition to the economic and reputational harm of El Paso County, BNHR has also suffered irreparable harm.

### iii.   *BNHR's organizational harm is irreparable absent an injunction.*

Defendants claim that BNHR's diversion-of-resources theory fails to carry BNHR's burden to show irreparable injury in the absence of its requested injunction.   Defs.' Supp. Br. 5–6, ECF No. 134.   In Defendants' retelling, BNHR has not established that its reallocation of resources has imposed concrete irreparable harm beyond simply undertaking a different form of border policy advocacy.   *Id.*

This too the Court has already addressed to the contrary in its Memorandum Opinion and does so again here because BNHR has established irreparable injury.   Mem. Op. 18–22, ECF No. 129.   More than being forced to undertake a different form of border policy advocacy, BNHR's resources have been drained and diverted, as illustrated by the cancelation of a signature event and additional expenditures to counteract Defendants' unlawful actions that differ from its routine expenses.   *Id.* at 18, 21.   Because BNHR and El Paso County have satisfied the first and second *Winter* factors, irreparable harm that cannot be treated with traditional remedies at law, the Court will address the remaining factors.

### 2.   The Balance of Equities and Public Interest Weigh in Favor of Injunctive Relief.

Where, as here, the Government is a party to the case, the third and fourth permanent injunction factors merge: the balance of the equities and public interest.   *See Nken v.*

*Holder*, 556 U.S. 418, 435 (2009).

Plaintiffs reiterate the irreparable injury facts described above, which would cause severe hardship absent an injunction and tips the balance of the equities in their favor.   *See* Pls.' Supp. Br. 8, ECF No. 130.   Plaintiffs further argue that Defendants have no legitimate interest in taking actions that violate the CAA, or in spending funds that Congress appropriated for purposes other than a border wall.   *Id.*   And while the importance of border security should not be minimized, according to Plaintiffs, that concern cannot override the public's interest in the Executive Branch complying with the law.   *Id.*   That is especially so when Congress—the People's representatives—determined that securing the border required only $1.375 billion, not $6.1 billion, to be spent on a wall.   *Id.* (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 655 (1952)).

Defendants argue to the contrary that these factors tip in their favor because the Supreme Court has recognized that the Government has "compelling interests in safety and in the integrity of our borders."   Defs.' Supp. Br. 6, ECF No. 134 (citing *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 672 (1989))."   Defendants address § 284 and § 2808 projects separately.

### i.  *§ 284 construction shall not be enjoined.*

Because the Court agrees with the Supreme Court, as stated above, an injunction on the use of § 284 funds will not issue.   *See supra* 7.   However, Defendants largely repeat their arguments for why equity and public interest weigh against a permanent injunction on both § 284 and § 2808 funding for border wall construction.   Defs.' Supp. Br. 8, ECF No. 134. Thus, the Court will address Defendants' arguments as they pertain to § 2808.

*ii.  § 2808 construction shall be enjoined.*

Defendants argue that enjoining § 2808 projects would prohibit the Government from taking critical steps needed to prevent the continuing surge of illegal drugs from entering the country through the southern border.    Defs.' Supp. Br. 6, 7–9, ECF No. 134 (citing *United States v. Guzman-Padilla*, 573 F.3d 865, 889 (9th Cir. 2009) (Government has a "strong interest [ ]" in "interdicting the flow of drugs" entering the United States)).    Defendants explain that these undisputed harms "plainly outweigh[ ]" Plaintiffs' asserted injuries arising from construction with § 2808 funds.    *Id.* (citing *Winter*, 555 U.S. at 26, 33).    And according to Defendants, Plaintiffs' asserted reputational, economic, and organizational harms, which arise principally from the Proclamation's message, have essentially no connection to the legal violation of the CAA that the Court identified.    *Id.*    Given that, and in light of Defendant's self-proclaimed "weighty and undisputed interest in undertaking projects to assist with drug interdiction at the southern border, it would be an abuse of discretion for this Court to award the 'extraordinary remedy' of a permanent injunction on § [2808 construction to provide Plaintiffs relief from the specific violation the Court identified."    *Id.* at 7 (citing *Winter*, 555 U.S. at 22).

Defendant's first citation to *Von Raab*, *see supra* 15, is unpersuasive in this context because while the Supreme Court did hold that the Government has "compelling interests in safety and in the integrity of our borders[,]" it did so in contrast to the less compelling privacy expectations of an armed customs officer who had to submit to urine analysis.    489 U.S. at 672.    Likewise, *Guzman-Padilla* does not counsel a ruling in Defendants' favor as it was similarly decided within a distinct Fourth Amendment context.    573 F.3d at 889 (9th Cir. 2009).

Drawing upon *Guzman-Padilla* for support, Defendants overstate this Court's

16

permanent injunction as aimed at all § 284 projects—and impliedly § 2808 projects.   *See* Defs.'

Supp. Br. 6, 8, ECF No. 134.   Far from enjoining all § 2808 projects, this Court only enjoins the

use of funds to increase funding in contravention of the fixed amount prescribed in the CAA.

*See infra* 20.   Defendants are not prohibited from taking steps to prevent illegal drugs from

entering the country through the southern border, but they are prohibited from violating the

CAA.   *Id.*

Next, Defendants liken Plaintiffs to the unsuccessful plaintiffs in *Winter* whose

interests in whale watching trips, observing marine mammals underwater, and conducting

scientific research on marine mammals was outweighed by both the Navy's interest and the

public interest in sonar training exercises.   555 U.S. at 26.   An injunction on these unique

training exercises would force the Navy to deploy unprepared antisubmarine forces and, thus,

jeopardize the safety of the entire feet.   *Id.*   The Supreme Court was careful to limit its holding

because "[o]f course, military interests do not always trump other considerations, and we have

not held that they do."   *Id.*

Far from enjoining a unique or sole source of funding, which would make this

case more analogous to *Winter*, this injunction merely stops the unlawful augment of the funds

that were already appropriated for border wall funding.   *See* Mem. Op. 32, ECF No. 129.

Finally, granting a preliminary injunction would not "disserve the public interest."   Pls.' Mot.

Summ. J. 50, ECF No. 54 (quoting *Planned Parenthood of Gulf Coast Inc. v. Gee*, 862 F.3d 445,

479 (5th Cir. 2017).   To the contrary, because Defendants' actions are unlawful and the

people's representatives—Congress—declined to augment the border wall budget as Defendants

attempt, the public interest would be served by halting them.   *Id.*

Finally, Defendants argue that both the Government and the public have a

17

compelling interest in ensuring that its military forces are properly supported with necessary resources for successful missions.   Defs.' Supp. Br. 7, ECF No. 134.   Defendants cite *Goldman v. Weinberger* for the proposition that courts must "give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest."   475 U.S. 503, 507 (1986).   However, the Supreme Court was careful in that case to limit its holding to the particular military context where First Amendment rights are necessarily circumscribed.   *Id.*   So when it held that the Air Force did not have to make an exception to its dress code for religious apparel, it did so with great deference to military judgment.   *Id.* at 509.   This context is distinct from the present case and so is the level of deference required.   *See id.* at 507.   Thus, Plaintiffs satisfy all four *Winter* factors and a permanent injunction shall issue in their favor.

For the same reasons, Defendants do not have compelling reasons justifying an administrative stay of this decision as they have requested, though they are free to pursue a stay pending appeal before the Fifth Circuit.   Defs.' Supp. Mot. 13–14, ECF No. 134; *see* Fed. R. App. P. 8.

### 3. A Permanent Injunction, Rather than Preliminary Injunction, Is Appropriate Here.

The Court granted Plaintiffs' Motion for Summary Judgment, which is a final judgment that "ends the litigation on the merits." *McLaughlin v. Mississippi Power Co.*, 376 F.3d 344, 350 (5th Cir. 2004).   When a court grants a plaintiff summary judgment, a permanent—rather than preliminary—injunction should issue. *See, e.g.*, *Dep't of Texas, Veterans of Foreign Wars v. Texas Lottery Comm'n*, 760 F.3d 427, 441 (5th Cir. 2014) (en banc) (affirming summary judgment and permanent injunction); *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 296 (5th Cir. 2004) (same); *Sierra Club v. Trump*, 2019 WL 2715422, at \*6 (N.D. Cal. June 28,

2019) (granting summary judgment and permanently enjoining border wall construction under §

8005).    After all, there is no need to determine whether the plaintiff is "likely to succeed on the

merits" (as a court does in a preliminary-injunction posture, *see Pendergest-Holt v. Certain*

*Underwriters at Lloyd's of London*, 600 F.3d 562, 568–69 (5th Cir. 2010)) once the court

determines that the plaintiff has succeeded on the merits.    Because this Court granted Plaintiffs'

summary judgment and because Plaintiffs have met all four *Winter* factors, a permanent

injunction is the proper form of equitable relief.

**IV.    The Permanent Injunction on the Use of § 2808 Funds Beyond the $1.375 Billion in the CAA Is Not Overbroad.**

Defendants make much of the difference between the Plaintiffs' original and

amended proposed injunction order, calling the latter especially overbroad.    Defs.' Supp. Br.

9–10.    The relevant portion of Plaintiffs' original Proposed Order reads: the Defendants "are

enjoined from border wall construction using funds **appropriated by the 2019 Consolidated**

**Appropriations Act** for 'military construction' under 10 U.S.C. § 2808, and 'support for

counterdrug activities' under 10 U.S.C. § 284."    Proposed Order 2, ECF No. 130-1 (emphasis

added).    The Plaintiffs' Amended Proposed Order reads: the Defendants "are enjoined from

border wall construction using funds appropriated for 'military construction' under 10 U.S.C. §

2808, and 'support for counterdrug activities' under 10 U.S.C. § 284."    Amended Proposed

Order 2, ECF No. 131-1.    The bold language has been taken out and, according to Defendants,

this shows that Plaintiffs are aware that an injunction is inappropriate because no "funds

appropriated by the 2019 [CAA]" are being used to carry out the disputed construction.    Defs.'

Supp. Br. 9 (citing Mem. Op. 30–31, ECF No. 129).    Defendants go on to reargue the merits of

the CAA's prohibition on additional funding for border wall construction, limiting that

prohibition to only other provisions within the CAA itself.    *Id.*    The Court disagreed in its

Memorandum Opinion and continues to uphold the "general principle of statutory interpretation" that "a more specific statute will be given precedence over a more general one," which necessitates an injunction against the unlawful augment of funds for border wall construction. Mem. Op. 25, ECF No. 129 (quoting *Nevada v. Dep't of Energy*, 400 F.3d 9, 16 (D.C. Cir. 2005)) (internal quotations omitted).

## CONCLUSION

After succeeding on the merits of their claim at summary judgment, Plaintiffs are entitled to a declaratory judgment against the agency head Defendants' unlawful attempt to augment the CAA funds with § 2808 funds above the appropriated $1.375 billion.    Far from conflicting with the Supreme Court's decision in *Sierra Club*, this Court's decision is not based on whether the DOD Secretary exceeded his statutory authority under § 284 and, indeed, the Court deemed Plaintiffs' argument relying on this line of reasoning invalid.    Because Plaintiffs have demonstrated irreparable harm, an inability of traditional remedies at law to rectify that harm, and the balance of the equities and public interest weigh in their favor, they are entitled to a permanent injunction against Defendants' use of § 2808 funds for border barrier construction.

**IT IS HEREBY ORDERED** that a **DECLARATORY JUDGMENT ISSUE** declaring the Proclamation 9844 of February 15, 2019, 84 Fed. Reg. 4949, **UNLAWFUL** to the extent it authorizes agency head Defendants Mark T. Esper, Chad F. Wolf, Todd T. Semonite, David Bernhardt, and Steven T. Mnuchin to use § 2808 funds beyond the $1.375 billion in the 2019 Consolidated Appropriations Act for border wall construction.

**IT IS FINALLY ORDERED** that agency head Defendants Mark T. Esper, Chad F. Wolf, Todd T. Semonite, David Bernhardt, and Steven T. Mnuchin are **PERMANENTLY ENJOINED** from using § 2808 funds beyond the $1.375 billion in the 2019 Consolidated Appropriations Act for border wall construction.

SIGNED this _10th_ day of **December 2019**.

---

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**