IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| EL PASO COUNTY, TEXAS; BORDER NETWORK FOR HUMAN RIGHTS,<br><br>    Plaintiffs,<br><br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>    Defendants. | Case No. EP-19-CV-66-DB |

**DEFENDANTS' MOTION TO STAY ORDER
GRANTING PERMANENT INJUNCTION PENDING APPEAL**

## INTRODUCTION

On December 10, 2019, this Court entered a permanent injunction prohibiting the Department of Defense (DoD) from "using § 2808 funds beyond the $1.375 billion in the 2019 Consolidated Appropriations Act for border wall construction." *See* Mem. Op. Re. Injunction ("Injunction") 21, ECF No. 137; *see also* ECF No. 136 (minute order). The Government filed a timely notice of appeal of the Injunction and the Court's Memorandum Opinion (ECF No. 129) concluding that the Government's use of 10 U.S.C. § 2808 violated the CAA, *see* ECF Nos. 135 & 138, and now moves to stay this Court's order granting the injunction, Fed. R. Civ. P. 62(c). *See California v. Trump*, 2019 WL 6727860, at *26 (N.D. Cal. Dec. 11, 2019) (staying its own injunction pending appeal because the "Supreme Court's stay of this Court's prior injunction order appears to reflect the conclusion of a majority of that Court that the challenged construction should be permitted to proceed pending resolution of the merits"). Although the Court has already indicated that it will not grant a stay, Injunction at 3, a defendant is "ordinarily" required to "move first in the district court" for a stay pending appeal before seeking that relief from the court of appeals. Fed. R. App. P. 8(a)(1)(A). Defendants therefore respectfully request that the Court rule on their request for a stay expeditiously. If, upon reviewing this motion, the Court does not believe Defendants have met the requirements for a stay, Defendants request that the Court summarily deny the motion without awaiting a response from Plaintiffs. In light of the need for expedited relief and the Court's prior statement that it will not grant a stay, the Government is also filing today in the Fifth Circuit a motion for stay pending appeal.

## ARGUMENT

Four factors govern a request for a stay pending appeal: (1) whether the movant is likely to succeed on the merits; (2) whether the movant will suffer irreparable harm absent a stay; (3) whether a stay will substantially harm the other parties; and (4) whether a stay serves the public interest. *See Planned Parenthood v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013). Where the federal government is a

party, its interests and the public interest overlap in the balancing of harms. *See Nken v. Holder*, 556 U.S. 418, 420 (2009).

## I. The Government Is Likely to Succeed on Appeal.

### A. Plaintiffs Have Not Established Standing to Challenge Border Barrier Construction.

The Court found that both El Paso County and the Border Network for Human Rights (BNHR) have Article III standing to challenge the Government's use of § 2808. *See* Mem. Op. at 8–24. Respectfully, the Court erred in these assessments. To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000). As the Government has previously explained, *see* ECF No. 95 at 35–44; ECF No. 106 at 11–17; ECF No. 126 at 5–7, Plaintiffs have not satisfied these criteria.

The Court found that El Paso County was the "object of the Proclamation" because the "Proclamation is aimed at building a border wall along the southern border between El Paso County and Mexico." Mem. Op. at 10. It then found the County had "suffered an injury in fact to its reputation that is traceable to the Proclamation," *id.* at 13, and identified pecuniary harm in the form of lost revenues and additional spending designed to counteract the Proclamation and the prospect of economic harm due to the withdrawal of military construction funding from Fort Bliss, *id.* at 16. But the Secretary has not exercised his authority to undertake § 2808 construction within even 100 miles of the County. *See* Administrative Record at 11 (ECF No. 123-2). It is therefore not the "object" of any government decision. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (explaining that where challenged government actions "neither require nor forbid any action on the part of [the challenging party]," that party is not "the object of the government action or inaction" and standing

2

is "substantially more difficult to establish"). The County's disagreement with the Proclamation's message about "the southern border" generally is precisely the sort of unverifiable "stigmatic injury" caused by a government message that the Fifth Circuit has warned cannot ground standing outside the First Amendment context. *See Barber v. Bryant*, 860 F.3d 345, 355 (5th Cir. 2017). The County's standing is not strengthened because DoD decided to defer a $20 million road project slated for Fort Bliss in order to fund § 2808 construction, as the County has adduced no evidence of "a direct injury in the form of a loss of specific tax revenues" that would result from this decision. *Wyoming v. Oklahoma*, 502 U.S. 437, 448–49 (1992); *see Arias v. DynCorp*, 752 F.3d 1011, 1015 (D.C. Cir. 2014) ("Lost tax revenue is generally not cognizable as an injury-in-fact for purposes of standing.").

BNHR's asserted injuries fare no better. The Court credited BNHR's assertions that it had to divert resources from its traditional activities to "counteract" the Government's actions—assertions that were made before any § 2808 construction had actually been announced. Mem. Op. at 22. But BNHR is only "counteracting" the Proclamation in the sense that it has concluded that, through no compulsion on the Government's part, it needed to change its approach to community education, lobbying, and activism as an expression of its disagreement with the Proclamation. The character of these activities is not a diversion from the activities of any political advocacy or lobby grouping. The Fifth Circuit has rejected the idea that resources expended "examining and communicating about" government action in a particular realm, on its own, is a basis for standing. *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010). And there is no evidence that the Proclamation "forced BNHR to cancel initiatives," as the Proclamation does not in any way inhibit BNHR's ability to exercise its First Amendment rights or engage in activities that advance its mission. Mem. Op. at 22.

    **B.    Plaintiffs' CAA Claim Is Meritless**

        **1.    Plaintiffs Lack a Cause of Action to Enforce the CAA.**

The Government is also likely to succeed on its appeal because Plaintiffs lack a cause of action

to enforce the CAA. In a one-sentence footnote, the Court concluded that Plaintiffs have an implied cause of action under the CAA for "equitable relief against a defendant for exceeding its statutory authority," independent of the Appropriations Clause or the APA. Mem. Op. at 24 n.1. This conclusion was incorrect for three reasons.

*First*, Plaintiffs did not endorse this theory and never argued it to the Court, with good reason: Plaintiffs do not fall within the zone of interests of the CAA such that they could bring an implied equitable cause of action under the CAA. *See* Pls.' Supplemental Brief at 4 (ECF No. 127) (asserting causes of actions only under the APA and the Appropriations Clause).

*Second*, notwithstanding the fact that neither party briefed the issue, the Court incorrectly reasoned that Plaintiffs have a cause of action, regardless of whether Plaintiffs were within the zone of interests protected by the CAA, because the zone-of-interests test "is inapposite" in the context of a freestanding equitable claim. Mem. Op. at 24 n.1. But the zone-of-interests requirement is a general presumption about Congress's intended limits on the scope of all causes of action. *See Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (the zone-of-interests test "'is a 'requirement of general application'" (quoting *Bennett v. Spear*, 520 U.S. 154, 163 (1997)). *Lexmark*'s reference to the requirement as applying to all "statutory" or "statutorily created" causes of action, *see id.*, encompasses equitable causes of action, which are inferred from Congress's statutory grant of equity jurisdiction and which enforce statutes enacted against the backdrop of the zone-of-interests limitation, *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015); *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999).

*Third*, even if the Court were to construe Plaintiffs' claims as arising under the APA or Appropriations Clause, Plaintiffs must still fall within the zone of interests of the CAA. When a plaintiff brings a cause of action under the APA, to challenge the government's compliance with another statute, the "interest he asserts must be 'arguably within the zone of interests to be protected

4

or regulated by the statute' that he says was violated." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012). The Supreme Court has also explained that the zone-of-interests requirement applies to implied equitable causes of action under the Constitution. *See, e.g.*, *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) ("[T]he Court has required that the plaintiff's complaint fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (quotation omitted)).

Accordingly, the Fifth Circuit is likely to conclude that Plaintiffs lack a cause of action to challenge alleged violations of the CAA, just as the Supreme Court stayed an order from another district court enjoining border barrier construction because, "[a]mong [other] reasons . . . the Government has made a sufficient showing at this stage that plaintiffs have no cause of action to obtain review" of a similar appropriation provision. *Trump v. Sierra Club*, No. 19A60, 2019 WL 3369425, at *1 (2019).

### 2. The CAA Does Not Prohibit the Use of § 2808 for Border Barrier Construction.

Even though the Court should not have reached the merits of the CAA claim, the Court's analysis of the question was incorrect and warrants a stay pending appeal. The CAA does not expressly or impliedly prohibit § 2808 projects funded by appropriations in other statutes, and therefore does not prohibit them. *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 200 (2012) ("An agency's discretion to spend appropriated funds is cabined only by the 'text of the appropriation,' not by Congress' expectations of how the funds will be spent, as might be reflected by legislative history." (quotation omitted)). The "general principle of statutory interpretation" that "a more specific statute will be given precedence over a more general one," *see Nevada v. Dep't of Energy*, 400 F.3d 9, 16 (D.C. Cir. 2005) (quotations omitted), does not prohibit the use of funds appropriated by Congress in *different* appropriations acts (the DoD Appropriations Act and annual military construction appropriations), to a *different* executive branch agency (DoD), in order to exercise *different* statutory authorities conferred

5

on that agency by permanent legislation (§ 2808).

Plaintiffs' CAA theory cannot be salvaged by § 739, either. Congress's decision to appropriate funds to DHS for pedestrian fencing in the Rio Grande Valley Sector is no obstacle to DoD's use of § 2808 for construction elsewhere because those DoD statutes do not "increase . . . funding for a program, project, or activity" within DHS's budget. General Accounting Office, *A Glossary of Terms Used in the Federal Budget Process* 80 (Sept. 2005) (defining "program, project, or activity" as an "[e]lement within a budget account"); *see* 31 U.S.C. § 1112 (GAO is statutorily required to publish and maintain standard terms related to the federal budget process). DoD is not transferring funds to any "program, project, or activity" within one of DHS's budget accounts, as that term is used in the CAA. *See King v. St. Vincent's Hosp.,* 502 U.S. 215, 221 (1991) ("the meaning of statutory language, plain or not, depends on context"). Consequently, the Court's reliance on a dictionary definition of the word "project" was misplaced. *See* Mem. Op. at 31.

Other than the now-stayed injunction in *Sierra Club*, this Court's reliance on an appropriations statute for one agency to enjoin otherwise lawfully authorized and separately funded activity of another agency is without precedent. A stay is therefore appropriate while the Fifth Circuit assesses this novel ruling on appeal.

### C. The Court Erred Issuing an Injunction.

The Court committed further error by concluding that Plaintiffs' gossamer assertions of harm provide a sufficient basis, in equity, to stay spending on border barrier construction pursuant to § 2808 nationwide. As explained in detail in the Government's supplemental briefing regarding an injunction, ECF No. 134, injunctive relief is not appropriate in this matter given the weight of the Government's interests in securing the border and preventing illegal drugs from entering the United States, and the weakness of the purported reputational and organizational harms supporting Plaintiffs' request for a nationwide injunction. Accordingly, the Government is likely to demonstrate on appeal that the Court

6

did not properly balance the equities and consider the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## II. The Balancing of Harms Supports a Stay Pending Appeal

The Court's nationwide injunction on all § 2808 projects, not just those in New Mexico, will cause serious and irreparable harm to the Government and the public that significantly outweighs any reputational, pecuniary, or organizational harms Plaintiffs might suffer if the injunction is stayed.

The President has declared a national emergency because of the large numbers of aliens attempting to cross the southern border outside of designated ports of entry and the significant quantities of illegal drugs that continue to be smuggled across the border each year. *See* Presidential Proclamation on Declaring a National Emergency Concerning the Southern Border of the United States, 2019 WL 643819, at *1 (Feb. 15, 2019); Veto Message for H.J. Res. 46 (Mar. 15, 2019); Veto Message for S.J. Res. 54 (Oct. 15, 2019); *see also* Decl. of Millard F. LeMaster (listing fiscal year 2019 statistics for apprehensions and drug seizures in the 2808 projects sectors) (attached as Exhibit 1). The Government's interest in "safety and the integrity of our borders" is unquestionably "compelling," *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 672 (1989), as is its interest in "interdicting the flow of drugs" into the country, *United States v. Guzman-Padilla*, 573 F.3d 865, 889 (9th Cir. 2009).

The President also determined that the skills and resources of the armed forces are required to confront the crisis at the border and vindicate the Government's compelling interests. *See* Proclamation. Further, the Secretary of Defense concluded, based on detailed analysis and advice from the Chairman of the Joint Chiefs of Staff, that the § 2808 projects are necessary to support the use of the armed forces in the context of their support to DHS at the southern border. *See* AR at 1–11; 42–75; 97–137. The § 2808 projects will reduce demand for DoD personnel and assets at the locations where the barriers are constructed and allow redeployment of DoD personnel and assets to

other high-traffic areas on the border without barriers. *See* AR at 9. The barriers will serve as force multipliers and allow DoD to support DHS more efficiently and effectively. *Id.* These judgments must be "give[n] great deference" by a reviewing court, and nothing in the Court's order casts doubt on the validity of the Government's interests. *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986).

In addition to these harms to the Government's exigent interest in securing the border, the Government will sustain further irreparable harm from the practical effects of the Court's injunction, as outlined in the Declaration of Col. Rafael F. Pazos (attached as Exhibit 2). Field personnel were conducting extensive pre-construction work in several project areas at the time of the Court's injunction, and the Court's injunction stops those activities and delays the start of barrier construction. *See id.* ¶¶ 16, 18. Additionally, each day the Court's injunction continues and contract performance on the § 2808 projects is suspended, DoD will incur liabilities to the contractors for significant, otherwise-unnecessary costs, all of which DoD would not have incurred but for the Court's injunction. *See* Pazos Decl. ¶¶ 11–24. DoD estimates that these costs, at a minimum, will be nearly $1 million per month. *Id.* ¶ 20. Should the Government ultimately prevail in this litigation, these additional costs will come out of the finite funds available for military construction and will thus irreparably harm the Government's military construction efforts by limiting the amount of border barrier construction that would otherwise occur. *Id.* ¶ 24. Further, contractors have incurred significant costs for work already undertaken on the § 2808 projects, but the Court's injunction prevents DoD from paying those costs. *Id.* ¶ 21–23. The inability to pay the contractors for the work undertaken to date will result in additional costs to the Government in the form of penalty fees as well as harm the Government's ability to secure future contractors for important Federal contracts. *See id.*

These costs and fees will quickly become unsustainable for the Government, and if the contracts remain suspended for too long, DoD will be forced to reduce the scope or terminate the contracts. *Id.* ¶ 25 (estimating at least $1.5 million to terminate contracts). Moreover, even if the

8

Government were to prevail on appeal, the Government would then face additional administrative costs for re-procuring new contracts to complete the unfinished work left after termination. *Id.* ¶¶ 28–29. The process of re-procuring the contracts would likely require higher prices for labor, materials, and equipment, all of which would have would otherwise be spent on actual barrier construction. *Id.* Consequently, even an injunction lifted at the conclusion of the appellate process, could prove fatal to a large portion of the border barrier military construction projects.

The irreparable harm to these interests created by the Court's injunction far outweighs the harm to Plaintiffs' reputational, pecuniary, and organizational interests if the injunction were stayed pending appeal, just as the harms from prohibiting the Navy's sonar testing did when balanced against the plaintiffs' observational and scientific interests in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 26, 33 (2008).

### III. In the Alternative, the Court's Injunction Should Be Limited Only to the $20 Million Designated for Fort Bliss

The Government maintains that no injunction should have issued in this case, and that a complete stay of the injunction is appropriate. Nonetheless, if the Court is inclined to maintain an injunction while the Government pursues its appeal, the most the Plaintiffs should receive is an injunction prohibiting DoD from deferring the $20 million associated with the roads project at Fort Bliss. Such a stay would alleviate the irreparable harm the Court's injunction currently imposes on the Government, while fully preserving Plaintiffs' purported interest in military construction within El Paso County's boundaries, the only injury it alleges that could theoretically be harmed irreparably absent an injunction. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (injunctions "should be no more burdensome to the defendant than necessary to provide complete relief").

### IV. The Government Must Expend § 2808 Funds To Comply With the Court's Injunction and Avoid Irreparable Harm to the Government and Public.

The Government does not interpret the Court's injunction, which prevents the use of funds

9

beyond the amount appropriated in the CAA "for border wall construction," as prohibiting DoD from expending unobligated military construction funds to comply with the Court's injunction. The Government must undertake an orderly wind-down of the activities that were ongoing prior to the injunction and that necessarily requires the expenditure of funds, including to transition employees to non-§ 2808 projects and to pay for deployed employees to return to their home offices. *See id.* ¶ 31 (transition and travel costs estimated to be $26,000).

Additionally, the Government intends to maintain a minimal level of personnel to perform basic operations associated with the suspended § 2808 contracts for purposes other than "border wall construction." *See id.* ¶ 32–34. For example, the Government must continue to expend unobligated military construction funds to perform a small number of functions essential to protect government assets already on the ground in the project areas, to maintain site safety and security, to ensure that the contractors do not perform any work while the contracts are suspended, and to prevent improper expenditure of funds. *See id* (listing other activities). The cost to maintain a minimal staff to perform these "caretaker" duties while the contracts remain suspended is expected to be approximately $118,000 per week. *See id.* ¶ 33. The Government does not construe the Court's injunction to prohibit these activities because use of funds for these purposes is not "for border wall construction."

## CONCLUSION

For these reasons, the Court should stay its order granting an injunction, pending appeal.

Dated: December 16, 2019               Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

/s/ *Andrew I. Warden*
ANDREW I. WARDEN (IN Bar 23840-49)
Senior Trial Counsel, Federal Programs Branch

/s/ *Michael J. Gerardi*
MICHAEL J. GERARDI (D.C. Bar No. 1017949)
KATHRYN C. DAVIS
LESLIE COOPER VIGEN
RACHAEL L. WESTMORELAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St., NW, Rm. 12212
Tel: (202) 616-0680
Fax: (202) 616-8460
E-mail: michael.j.gerardi@usdoj.gov

*Counsel for Defendants*

## LOCAL RULE CV-7(i) CERTIFICATION

   I certify that I conferred with counsel for Plaintiffs regarding the relief sought in this motion. Because the parties are not in agreement regarding the Government's legal entitlement to a stay the Court's order granting a permanent injunction, pending appeal, Plaintiffs oppose the motion.

                   */s/ Michael J. Gerardi*
                   Michael J. Gerardi

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the clerk using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

                   */s/ Michael J. Gerardi*
                   Michael J. Gerardi